UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

WENDELL SWEET and
STEVEN SWEET,

       Plaintiffs,

v.                                          Case No. 13-CV-0258 KG/RHS

AUDUBON FINANCIAL BUREAU, LLC,
DEBT MANAGEMENT PARTNERS, LLC,
and KYAN JULIUS,

       Defendants.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court on Defendant Debt Management Partners' (DMP) Motion to Dismiss Defendant Debt Management Partners, LLC, for Lack of Personal Jurisdiction (Motion to Dismiss), filed April 29, 2013. (Doc. 12). On May 20, 2013, Plaintiffs filed a response in opposition, and on June 10, 2013, Defendant DMP filed its reply. (Docs. 17 and 18). Having reviewed the Motion to Dismiss, the response, and the reply, the Court finds Defendant DMP's Motion to Dismiss well taken and should be granted.

A. Background

       *1. Factual Allegations in the Complaint (Doc. 1)*

       Plaintiffs brought this lawsuit against Defendants alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*, New Mexico Unfair Practices Act (NMUPA), NMSA 1978 §§ 57-12-2(D)(14)-(15), and two state common law torts. (Doc. 1) at 11-13.

       Plaintiffs allege that Plaintiff Wendell Sweet obtained a payday loan from The Cash Store, which is located in Albuquerque, New Mexico. *Id.* at 3. Plaintiff Wendell Sweet was the

only signatory on the loan contract.  *Id.*  At some point afterward, Plaintiff Wendell Sweet fell behind on his payments.  *Id.*  DMP, which is in the business of purchasing debts, some of which are in default at the time of the purchase, purchased Plaintiff Wendell Sweet's loan from The Cash Store as part of a portfolio of payday loans.  *Id.*

Defendant Audubon Financial Bureau (AFB) is wholly owned by DMP and collects on loans, including this loan, on behalf of DMP.  *Id.*  Defendant Julius is a management employee of AFB.  *Id.*  In February 2013, Plaintiffs began receiving a series of telephone calls, including voice messages, and emails from AFB.  *Id.* at 3-9.  In addition, Plaintiffs and AFB employees had multiple telephone conversations.  *Id.* at 4-7.  Plaintiffs allege that Defendant Julius participated in and oversaw the collection efforts on behalf AFB.  *Id.* at 2-3.  Plaintiffs further contend that DMP directed AFB to collect the loan in the manner alleged.  *Id.* at 3.  It is the timing and nature of the phone calls, voice mail messages, and emails that give rise to the Plaintiffs allegations in this lawsuit that Defendants violated the FDCPA and the NMUPA.

2. *Motion to Dismiss*

Defendant DMP moves to dismiss all of Plaintiffs claims against it under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction because (1) it does not have sufficient minimum contacts to satisfy specific personal jurisdiction, and (2) DMP and AFB are two distinguishable corporate entities and must be treated accordingly for establishing specific personal jurisdiction. In support of its assertion, DMP provided the affidavit of Daniel Valentine (Valentine), a member of DMP, who attests that DMP purchased the debt at issue on or about January 14, 2013, as part of a portfolio of payday loans.  (Doc. 12-1) at 1.  At the time of the purchase, DMP and its members were unaware that the debt originated in New Mexico.  *Id.* at 1-2.  DMP does not own property in New Mexico, nor purposefully purchased debt or directed any business activity towards New Mexico.  *Id.* at 2.  In addition, Valentine attests that AFB is a wholly

owned subsidiary of DMP, DMP does not manage the affairs of AFB on a daily basis, AFB maintains a separate "company management and structure," and DMP does not participate or monitor AFB's collection practices. *Id.* at 2. Plaintiff contends that specific personal jurisdiction is satisfied because DMP, acting through its agent AFB, engaged in repeated contacts in New Mexico.

B.  Discussion

It is well-established that the plaintiff bears the burden of showing that a court has personal jurisdiction over a defendant. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When a defendant bases its lack of personal jurisdiction argument on the pleadings and other documents, as in this case, the plaintiffs can meet his burden with a *prima facie* showing of personal jurisdiction. *Id*. In that situation, the Court accepts "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint.'" *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted)).

In a federal question lawsuit, such as this one, the Court determines personal jurisdiction over a non-resident defendant by the forum state's law. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209-10 (10th Cir. 2000) (citing Fed. R. Civ. P. 4(e)). The plaintiff "must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Because New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," the Court need not conduct a statutory analysis separate from the Due Process analysis. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018 ¶ 6, 132 N.M. 312; *Marcus*, 671 F.3d at 1166.

The Due Process analysis for specific personal jurisdiction is twofold.  First, the defendant "must have 'minimum contacts' with the forum state," *Marcus*, 671 F.3d at 1166 (citations omitted), which are such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  To establish minimum contacts, the plaintiff must show that the non-forum defendant "purposefully directed its activities at residents of the forum state," and that the plaintiff's injuries arose out of or relate to those forum-related activities.  *Shrader*, 633 F.3d at 1239 (citation and quotation omitted).  Second, if the defendant has minimum contacts with the forum state, the Court must ensure that the exercise of jurisdiction over [the defendant] does not offend traditional notions of fair play and substantial justice." *Marcus*, 671 at 1167 (citations and quotations omitted).

    *1.  Minimum Contacts:  Whether DMP Purposefully Directed Its Activities at New Mexico*

DMP argues that the Court lacks specific personal jurisdiction over it because DMP, as an individual corporation and as the parent corporation to AFB, does not have minimum contacts with the state of New Mexico.  Plaintiffs contend that the Court should treat DMP and AFB as the same legal entity in order to establish minimum contacts because DMP directed and controlled AFB's debt collection practices in New Mexico.  Specifically, Plaintiffs assert that DMP, acting through its agent AFB, repeatedly engaged in communication with Plaintiffs regarding the loan in question with the intent to benefit from the collection.  (Doc. 17) at 4, 6.  The Court will discuss each argument in turn.

    *a.  DMP, itself, did not purposefully direct its activities at New Mexico*

In deciding the purposeful direction part of the minimum contacts requirement, the Court looks to the following factors:  "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state. . . ." *Shrader*, 633 F.3d. at 1239-40 (citation and quotation omitted).  The purposeful direction

4

"requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Walker v. THI of N.M. at Hobbs Center*, 801 F. Supp. 2d 1128, 1142 (D.N.M. 2011) (quotation omitted).

In the present case, the evidence does not support any basis for finding that DMP, itself, participated in intentional acts expressly aimed at New Mexico. *See OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091-91 (10th Cir. 1998) (injury must arise out of "actions by the defendant *[it]self* that create a substantial connection with the forum state") (citation and quotation omitted). To the contrary, the Complaint alleges that employees of AFB conducted the intentional actions—phone calls, emails, and voicemails—that were directed at Plaintiffs, residents of New Mexico. In addition, the uncontroverted facts set forth in Valentine's affidavit establishes that DMP has no official presence in New Mexico. For instance, DMP is a Delaware corporation with its principal place of business in New York, DMP does not transact business in New Mexico, and DMP does not own property in New Mexico. Accepting the allegations in the Complaint as true and considering the uncontroverted affidavit, the Court finds that DMP did not participate in any intentional acts that were expressly aimed at Plaintiffs in New Mexico.

Furthermore, there is no evidence that DMP knew that the brunt of its alleged injuries to Plaintiffs would be felt in New Mexico. As addressed above, DMP does not conduct business in New Mexico. Moreover, it is undisputed that DMP did not have knowledge of the particular debt in this case. Nor did DMP know that the debtor, Plaintiff Wendell Sweet, resided in New Mexico. Based on these facts, the Court finds that DMP lacked the requisite knowledge that any injury could occur in New Mexico. Accordingly, the Court concludes that Plaintiffs have not satisfied their burden of establishing minimum contacts of a prima facie claim of specific personal jurisdiction.

> b. *DMP, through AFB, did not purposefully direct its activities at New Mexico*

5

As a general rule, a "parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (citation and quotation omitted); *see also Alto Eldorado P'ship, L.L.C. v. Amrep Corp.*, 2005-NMCA-131 ¶ 32, 124 P.3d 585, 596 ("[T]he mere relationship of a parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a non-resident and is not otherwise present or doing business in the forum state.") (citation and quotation omitted). Nonetheless, the Court may pierce the corporate veil, and, thereby, hold the parent company liable when a subsidiary is "set up for fraudulent purposes or where to recognize the corporation would result in injustice." *Scott v. AZL Rescources, Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988). Disregarding the corporate entity, however, is a drastic remedy. *Skidmore, Owings & Merrill v. Canada Life Assur. Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990).

In New Mexico, the plaintiff must establish three factors in order to pierce the corporate veil: (1) instrumentality or domination, (2) improper purpose, and (3) proximate causation. *Scott*, 107 N.M. at 121, 753 P.2d at 900. Instrumentality or domination means "proof that the subsidiary . . . was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes" of the parent company. *Garcia v. Coffman*, 124 N.M. 12, 16, 946 P.2d 216, 220 (1997).

Here, there is insufficient evidence showing DMP's domination and control of AFB to warrant piercing the corporate veil. Aside from Plaintiffs' allegation that DMP "directed" AFB to collect on the loan in this matter, Plaintiff has not proffered evidence—nor put forth allegations—that DMP exerted control over AFB's collection practices. Rather, in the uncontested affidavit, Valentine attests that AFB is a wholly owned subsidiary of DMP, that

DMP does not monitor or manage AFB's daily operations, and, more importantly, that DMP does not participate in or direct AFB's debt collection practices.  Additionally, in support of their contention, Plaintiffs rely heavily on the fact that DMP contracted its subsidiary, AFB, to collect the debt in this matter.  Plaintiffs contend that because DMP would eventually benefit from AFB's collection practices, DMP purposefully availed itself of the benefits and protections of New Mexico law.  Plaintiffs' argument is meritless.  Accepting the allegations in the Complaint as true, there is no evidence before this Court that DMP utilized the benefits and protections of New Mexico law to enforce its contract with AFB, or to enforce the collection of the debt in this matter.  *Cf. Zimmerman v. The CIT Group, Inc.*, 2009 WL 900172 (D. Colo. 2009) (company officer purposefully availed himself in forum state when he attempted to enforce parties' contract in forum state's court in exchange for financial benefit).  Moreover, Plaintiffs have failed to state how such a contract demonstrates DMP's alleged control over the day-to-day activities of AFB.

The Court, thus, finds that Plaintiffs have not shown the requisite level of control necessary to pierce the corporate veil.  Therefore, the Court will not disregard the corporate entities of the parent company and subsidiary for the purpose of analyzing specific personal jurisdiction.

Based on the aforementioned, the Court concludes that Plaintiffs have failed to meet their burden of showing that DMP purposefully directed its activities at the forum state, and, accordingly, the Court need not address the second element of a prima facie claim of specific personal jurisdiction.  Because Plaintiffs have not demonstrated that DMP has the quantity or quality of contacts necessary to satisfy minimum contacts, there is no basis for the Court to exercise specific personal jurisdiction over DMP.  *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).  Additionally, the Court need not discuss the fair play and substantial justice requirement since Plaintiffs have not carried their burden of showing that

DMP meets the required minimum contacts. Consequently, Plaintiffs' claims against DMP will be dismissed without prejudice for lack of personal jurisdiction.

    IT IS, THEREFORE, ORDERED, that Defendant Debt Management Partners' Motion to Dismiss Defendant Debt Management Partners, LLC, for Lack of Personal Jurisdiction (Doc. 12) is GRANTED and all claims against Defendant Debt Management Partners, LLC, will be dismissed without prejudice for lack of personal jurisdiction.

_____
UNITED STATES DISTRICT JUDGE