IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WENDELL SWEET and
STEVEN SWEET,

       Plaintiffs,

v.                                                                     CV 13-258 BRB/WPL

AUDUBON FINANCIAL BUREAU, LLC;
DOMENICO D'ANGELO; ADAM MARCH;
DANIEL VALENTINE; and MIGUEL GUZMAN,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    Judge Baldock referred this case to me to file written orders on all outstanding nondispositive motions and for a report and recommendation on all outstanding dispositive motions. Defendants Adam March and Daniel Valentine filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively to dismiss for failure to state a claim for which relief can be granted under Rule 12(b)(6). (Doc. 56.) Plaintiffs Wendell Sweet and Steven Sweet subsequently filed a motion for leave to file surreply. (Doc. 70.) I granted Plaintiffs' motion for leave to file a surreply. For the reasons explained below, I recommend that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction and grant-in-part and deny-in-part the motion to dismiss for failure to state a claim upon which relief can be granted.

**BACKGROUND**

    This case was filed in March 2013. The Court previously ruled on a motion to dismiss under Rule 12(b)(2) and determined that Debt Management Partners ("DMP"), a company

owned by March and Valentine, and the parent company of Audubon Financial Bureau, LLC ("AFB"), had not purposefully directed its activities at New Mexico or otherwise demonstrated the quantity or quality of contacts necessary to satisfy minimum contacts. Accordingly, the Court dismissed DMP. (Doc. 26.) Several months later, Plaintiffs filed their First Amended Complaint (Doc. 43), which is the operative complaint and the key document for the instant motions. Plaintiffs have brought claims against March and Valentine under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978 § 57-12-2(D)(14-15), and the common law tort of negligent hiring, supervising, or retention. (Doc. 43.)

The following background information comes from the parties' filings to date and is not a final adjudication of the facts in this case.

Wendell Sweet obtained a payday loan from The Cash Store in Albuquerque, New Mexico. He is the only signatory on the contract. At some point, Wendell Sweet fell behind on his payments. DMP, which is in the business of purchasing debts in bundles of hundreds or thousands, some of which are in default at the time of the purchase, purchased Wendell Sweet's loan from The Cash Store.

AFB is wholly owned by DMP and collects on loans, including this loan, on behalf of DMP. AFB is the successor to Marval & Associates, LLC, an earlier debt collection company that had collected consumer debts purchased by DMP. Marval & Associates was dismantled after encountering troubles processing payments and being the subject of numerous complaints to the Federal Trade Commission and various Attorney Generals Offices. Many of these complaints regarded inappropriate or unlawful collections tactics. (Doc. 70-1 at 20 (Kyan Julius Dep.).) Many of the collectors that had worked for Marval & Associates and had been the subject of

these complaints, referred to as "rogue collectors," continued to be employed by AFB. (Doc. 43 at 5.)

In February 2013, Plaintiffs began receiving a series of telephone calls, including voice messages, and emails from AFB. It is the timing and nature of the phone calls, voice mail messages, and emails that give rise to the allegations in this case.

March and Valentine are residents of New York. Neither has ever resided in New Mexico. Neither owns property or maintains a mailbox in New Mexico. Neither has a bank account or other assets in New Mexico. Neither works in New Mexico. March has passed through New Mexico while traveling, but never spent the night, and Valentine has never been to New Mexico. March and Valentine now bring this motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

The parties dispute the role played by March and Valentine in running or managing AFB. Plaintiffs contend that March and Valentine "created" AFB, "set up" AFB, chose to have "rogue collectors" from Marval & Associates continue on with AFB, received money from AFB through payroll and as a percentage of collected debts, intentionally undercapitalized AFB, comingled their personal finances with AFB, maintained control over the management of AFB despite installing Defendant Domenico D'Angelo as the CEO of AFB, intentionally structured AFB to hide their controlling interests, had ultimate authority over hiring and firing at AFB, and had ultimate authority on resolving legal issues related to AFB. (Doc. 43 at 4-6.) March and Valentine contend that they were unaware of individual debts, are not and have never been members of AFB, did not participate in the day-to-day management of AFB, were not involved

3

in the collection efforts by AFB regarding this case, did not comingle their personal finances with AFB, and were unaware of the debt issues in this case or the fact that the debt arose in New Mexico until this case was filed. (Doc. 57-1 (Adam March Aff.) and 57-2 (Daniel Valentine Aff.).)

It is well-established that the plaintiff bears the burden of showing that a court has personal jurisdiction over a defendant. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When a defendant bases its lack of personal jurisdiction argument on the pleadings and other documents, including affidavits, as in this case, the plaintiffs can meet this burden with a *prima facie* showing of personal jurisdiction. *Id*. In that situation, the Court accepts "'as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff[s'] complaint.'" *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted)).

In a federal question case, such as this one, personal jurisdiction over a non-resident defendant is determined by the forum state's law. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209-10 (10th Cir. 2000) (citing FED. R. CIV. P. 4(e)). The plaintiff "must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Because New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," the long-arm statute and Due Process analyses are coextensive. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 54 (N.M. 2002); *Marcus*, 671 F.3d at 1166.

Due Process requires that "defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and

4

substantial justice." *Anzures v. Flagship Rest. Grp.*, --- F.3d ---, ---, No. 15-1332, at 4 (10th Cir. Apr. 22, 2016) (quoting *Dudnikov*, 514 F.3d at 1070) (internal quotation omitted). Jurisdiction may be general or specific. General jurisdiction arises when the defendant has such "continuous and systematic" contacts with the state that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 & n.9 (1984)). Specific jurisdiction depends "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, --- U.S. ---, 134 S. Ct. 1115, 1121 (2014) (quotation omitted). A court may "assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1089 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation omitted)).

In the tort context, "purposeful direction exists when there is 'an intentional action . . . expressly aimed at the forum state . . . with [the] knowledge that the brunt of the injury would be felt in the forum state.'" *Anzures*, No. 15-1332, at 6 (quoting *Dudnikov*, 514 F.3d at 1072) (alterations in original). Further, the plaintiff's injuries must "arise out of [the] defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472). That is, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King*, 471 U.S. at 475).

March and Valentine contend that they should be dismissed because they "have not transacted any business within New Mexico nor have they committed a tortious act within the state." (Doc. 57 at 3.) As explained above, that is not the standard. The complaint does not include specific allegations as to personal conduct in or directed at New Mexico by March and Valentine. Rather, Plaintiffs contend that March and Valentine oversaw AFB and did so in an unsatisfactory manner that, at best, allowed a culture of rogue collectors to develop, and, at worst, engendered that sort of behavior. While March and Valentine averred that they were not involved with AFB and did not direct any of the complained of activities, Kyan Julius—AFB's former operations manager—testified at his deposition that March and Valentine drew a salary from AFB, knew of the errant collection practices, were kept appraised of and had final say over the legal happenings at AFB, and conducted exit interviews for high ranking AFB employees. (*See* Doc. 70-1.)

It is clear that AFB purposefully directed its actions at New Mexico and knew that injury from its conduct would be felt in New Mexico. The question is whether March and Valentine can be held responsible for that conduct. March and Valentine contend that, in order to hold them liable, Plaintiffs would need to pierce two corporate veils: AFB's and DMP's. (Doc. 57 at 6.) Piercing the corporate veil is a separate issue for another day.

If March and Valentine had been named members of AFB, they may have been protected from this Court's exercise of personal jurisdiction by the fiduciary shield doctrine. Under the fiduciary shield doctrine, jurisdiction over a corporation's representatives cannot be based on jurisdiction over the corporation itself. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d

1518, 1527 (10th Cir. 1987). "If an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise . . . of [personal] jurisdiction over him [in that state] on the basis of that conduct." *Allen v. Toshiba Corp.*, 599 F. Supp. 381, 384 (D.N.M. 1984) (citing *Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). However, the fiduciary shield doctrine does not apply when the person was a "'primary participant in the alleged wrongdoing intentionally directed' at the forum state, which activities formed the bases of the jurisdiction over the corporation." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1237 (N.M. Ct. App. 2001) (alterations omitted) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

While March and Valentine make much of the requirements for piercing the corporate veil or disregarding the corporate form, it is not necessary to engage in that analysis for purposes of personal jurisdiction. March and Valentine were very clear that they were not acting as fiduciaries of AFB and were not members of AFB. Yet Julius was clear, in his deposition, that March and Valentine nonetheless exerted control over AFB and directed its management, including directing and condoning collection methods such as those at issue in this case, intentionally concealed their involvement in AFB, and specifically rehired collectors known to engage in unlawful tactics.

March and Valentine admit that they, through DMP, purchased debts from around the country and could reasonably infer that some of those debts began in New Mexico. March and Valentine, through DMP, then placed those debts with AFB for collection. The Plaintiffs allege, and subsequently support with Julius's deposition transcript, that March and Valentine drew salaries from AFB and were responsible for AFB's hiring and firing decisions.

Given that AFB purposefully directed its activities at New Mexico and knew that the injury from its collection activities would be felt in New Mexico, and Plaintiffs' evidence that March and Valentine directed AFB's activities on a day-to-day basis and made all final hiring, firing, and legal decisions, I recommend that the Court find personal jurisdiction over March and Valentine. They directed contact with New Mexico that they knew or should have known was harmful, and could reasonably expect to defend a lawsuit in this state. Plaintiffs claims arise entirely out of and relate to the forum-related activities of AFB, March, and Valentine.

The next question is whether it is reasonable, under the circumstances, to assert personal jurisdiction over March and Valentine. The reasonableness determination is informed by assessing several factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI*, 149 F.3d at 1095.

Here, March and Valentine would be significantly burdened by defending a lawsuit in New Mexico, when they both reside in New York. This factor weighs against finding reasonableness. However, New Mexico has a significant interest in resolving this dispute—and ones like it—in order to enforce state and federal laws regulating debt collection practices and to protect New Mexico debtors. This factor weighs in favor of finding reasonableness. Third, Plaintiffs' have a clear interest in receiving convenient and effective relief. All of the injury in this case was felt in New Mexico; all of the allegedly harassing phone calls and emails were directed at New Mexico; and Plaintiffs have a significant interest in resolving the case at home. This factor weighs in favor of finding reasonableness. Fourth, this case has been pending for two

years. The interstate judicial system has an interest in obtaining swift, fair resolutions of controversies. Transferring the case to another district would frustrate this interest. Accordingly, this factor weighs in favor of finding reasonableness. Finally, the several states have a shared interest in furthering fundamental substantive social policies. This factor appears to be neutral, under the circumstances.

In light of all of the considerations, including that the harm was felt in New Mexico while many of the witnesses may reside in New Jersey, I recommend that the Court find it is reasonable to exercise personal jurisdiction over March and Valentine and that such exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

Accordingly, I recommend that the Court deny March and Valentine's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

March and Valentine move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), the Court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), the Court considers "the complaint as a whole, along with the documents incorporated by reference into the complaint" and construes all well-pleaded allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted).

March and Valentine contend that the FDCPA claim must fail because it is barred by the statute of limitations and because they are not "debt collectors" within the meaning of the FDCPA.

The FDCPA carries a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d) (2016) (action to enforce civil liability must be brought within "one year from the date on which the violation occurs"). The amended complaint alleges that the last contact between Plaintiffs and any defendant was on March 18, 2013. (Doc. 43 at 12-13.) Plaintiffs filed their original complaint March 19, 2013, but did not name March or Valentine at that time. (Doc. 1.) The amended complaint was filed on April 15, 2015, and named March and Valentine as parties-defendant for the first time. (Doc. 43.) Absent some equitable tolling doctrine, the statute of limitations ran on March 18, 2014.

Plaintiffs argue that they are entitled to equitable tolling to escape applicability of the statute of limitations.[1] Plaintiffs cite *Cada v. Baxter Healthcare Corporation* for the proposition that equitable tolling applies when the plaintiff knows that he has been injured but cannot obtain the information necessary to decide whether the injury is due to wrongdoing by the defendant, despite due diligence. 920 F.2d 446, 451 (7th Cir. 1990). Equitable tolling does not affect the date of accrual. *Id.* Plaintiffs argue that they could not have known of March and Valentine's allegedly concealed involvement with AFB until taking Julius's deposition, which they could not due until the stay was lifted. March and Valentine do not address Plaintiffs' equitable tolling argument.

March and Valentine reply that Plaintiffs agreed to a stay of discovery early in the case and, therefore, cannot now rely on the lack of discovery to equitably toll the statute or rely on the

---

[1] The Tenth Circuit has not decided whether the statute of limitations in FDCPA cases is jurisdictional or not. *Johnson v. Riddle*, 305 F.3d 1107, 1115 (10th Cir. 2002). If the statute of limitations is jurisdictional, equitable tolling cannot apply. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93-95 (1990). Other courts have held that FDCPA's statute of limitations is not jurisdictional, such that equitable tolling may apply. *See Mangum v. Action Collection Servs., Inc.*, 575 F.3d 935, 939-40 (9th Cir. 2009); *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir. 2000). There is a rebuttable presumption that statutory time limits are not jurisdictional. *See Irwin*, 498 U.S. at 95. Accordingly, I find that the statute of limitations for the FDCPA is not jurisdictional.

discovery rule. Plaintiffs do not rely on the discovery rule for equitable relief. Additionally, it does not appear from the record that Plaintiffs agreed to a stay of discovery. Rather, it appears that the Court entered a temporary stay after the Rule 16 Initial Scheduling Conference because there was a dispositive motion pending. (Doc. 25.) There is no evidence in the record to support March and Valentine's contention that Plaintiffs were amenable to the stay.

Equitable tolling of a statute of limitations applies only in "rare and exceptional circumstances." *Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007) (quotation omitted). "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quotation omitted). Equitable tolling may be applicable "when a [plaintiff] actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

Plaintiffs contend that they are entitled to equitable tolling of the one-year limitation because of March and Valentine's "intentional obfuscation of their role at AFB" and because Plaintiffs "have diligently pursued their rights." (Doc. 58 at 17.) Plaintiffs timely filed their FDCPA complaint within days of their last contact with any defendant. At the time, Plaintiffs named DMP, AFB, and Julius as defendants. The Court entered the stay in lieu of entering a Rule 16 Scheduling Order. After the Court's ruling on the first dispositive motion, Plaintiffs set Julius for deposition in March 2015. Less than a month later, on April 15, 2015, Plaintiffs filed their amended complaint based largely on Julius's deposition testimony.

While Plaintiffs could have argued against the stay or filed motions to lift the stay, the law does not require litigants to fight valid discovery orders at every turn in order to diligently pursue their rights. Plaintiffs' quick amendment of the complaint based on Julius's deposition,

their prompt filing of the original complaint, and their active requests for default against other defendants indicates that Plaintiffs have, indeed, diligently pursued their rights. Furthermore, it would not have been possible for Plaintiffs to know, prior to Julius's deposition, that March and Valentine were, allegedly, involved in shadow-management of AFB and directing the allegedly unlawful collection practices. I find that this is the rare and extraordinary case in which equitable tolling applies and the statute of limitations does not operate as a defense to the FDCPA claim.

Additionally, though the parties did not brief the issue, the relation-back doctrine also applies in this case. Federal Rule of Civil Procedure 15(c) provides that, where an amendment would add a party, "relation back" can occur if the party to be brought in by the amendment "has received such notice of the initiation of the action that the party will not be prejudiced in maintain a defense on the merits." *Brown v. Uniroyal, Inc.*, 108 F.3d 1306, 1307 (10th Cir. 1997). Relation back requires satisfaction of four factors:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). Relation back "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness on seeking to amend the pleading." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

Here, Plaintiffs originally claimed that DMP, as parent of AFB, directed AFB's conduct and was responsible for AFB's collection tactics because it exercised control over AFB. As members of AFB, March and Valentine were on notice of these claims. The claims brought in the amended complaint are largely identical and arise out of the same conduct. Assuming for

12

now that Julius was truthful, and that March and Valentine truly were engaged in shadow-operation of AFB and directed the hiring and firing of rogue collectors, March and Valentine should have known that, but for a mistake concerning identity, Plaintiffs would have named March and Valentine personally, rather than naming DMP in the original complaint. As stated above, the original complaint and effective service were filed well within the one-year statute of limitations for FDCPA claims. Accordingly, even if the Court finds that equitable tolling does not apply, the FDCPA claim against March and Valentine relates back to the time of the original complaint and was timely brought.

Next, March and Valentine argue that the FDCPA claim fails as a matter of law because the amended complaint does not establish that March or Valentine ever attempted to collect any debt, or were debt collectors, within the meaning of the FDCPA.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). There is no dispute that AFB operated as a debt collector. The question is whether, assuming that March and Valentine exercised control over AFB's operations, they can personally be considered debt collectors for purposes of the FDCPA.

The Tenth Circuit has not definitively ruled on whether individuals who are directly involved in the day-to-day operation of a debt collector, including training and managing employees, are themselves debt collectors within the meaning of the FDCPA and therefore can be held liable for any acts in which they directly or indirectly attempted to collect debts. However, in *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, the district court in Utah

13

confronted exactly this issue. 372 F. Supp. 2d 615 (D. Utah 2005). In *Brumbelow*, the court noted that "most of the district courts that have ruled on this issue agree that 'officers and employees of the debt collection agency may be jointly and severally liable with the agency.'" *Id.* at 618-19 (quoting *Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 689 (E.D. Pa. 2003)); *see also Ditty v. CheckRite, Ltd. Inc.*, 973 F. Supp. 1320, 1336-37 (D. Utah 1997); *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1371 (E.D. Cal. 1995); *Teng v. Metro. Retail Recovery, Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994).

While Plaintiffs do not contend that March or Valentine personally made inappropriate attempts to collect the alleged debt, Plaintiffs did plead that March and Valentine exercised control over AFB's affairs and were personally involved in the day-to-day operations of AFB. Given the broad language and policy goals of the FDCPA, persuasive authority from other jurisdictions, and March and Valentine's failure to respond to this argument despite having had the opportunity to do so, I recommend that the Court conclude that Plaintiffs adequately pled that March and Valentine are debt collectors within the meaning of the FDCPA and can sustain the FDCPA claim against March and Valentine, and, accordingly, deny March and Valentine's motion to dismiss the FDCPA claim against them.

Third, March and Valentine contend that the NMUPA claim against them fails as a matter of law because Plaintiffs do not allege that March or Valentine, personally, ever had any contact with either Plaintiff. Plaintiffs respond that the NMUPA does not require a direct relationship between plaintiff and defendant, and that corporate officers—or de facto corporate officers—may be held personally liable if the officer directs or ratifies tortious conduct. March and Valentine reply that Plaintiffs fail to specific allegations regarding the conduct in this case that falls within the scope of the NMUPA.

An "unfair or deceptive trade practice" is "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with . . . the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person." N.M. STAT. ANN. § 57-12-2(D). There are three essential elements to a NMUPA claim relating to debt collection: 1) the defendant made an oral or written statement, visual description, or representation of any kind that was misleading or false; 2) the misleading or false representation was knowingly made in the connection with collecting debt in the regular course of the defendant's business; and 3) the representation was of the type that may, tends to, or does mislead or deceive any person. *Dollens v. Wells Fargo Bank, N.A.*, 356 P.3d 531, 537 (N.M. Ct. App. 2015). The New Mexico Court of Appeals has determined that § 57-12-2(D) is "designed to encompass a broad array of commercial relationships" and "does not suggest that a direct representation, by the defendant to the plaintiff, is a prerequisite." *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1096 (N.M. Ct. App. 2007).

Plaintiffs allege that the NMUPA violation stems from, among other things, a statement to Steven Sweet that he was obligated to pay on his father's pay-day loan and that Wendell Sweet had named Steven Sweet as a cosignor on the loan. While this makes out a claim under the NMUPA, the question is whether that claim can be sustained against March and Valentine.

Plaintiffs rely on *Kaveny v. MDA Enters., Inc.*, for the proposition that a corporate officer can be held liable if the officer acts through improper means or if the officer directs or ratifies tortious conduct. 120 P.3d 854, 858 (N.M. Ct. App. 2005). Unfortunately, *Kaveny* deals with the intentional tort of fraud and individual liability therefore. Plaintiffs do not plead fraud in this case and do not point to a specific action or course of conduct that March or Valentine ratified,

15

approved, directed, or controlled that the directly relates to the harm in this case. Given this lack of connection between March and Valentine's actions and the specific allegations for violation of the NMUPA, I recommend that the Court grant March and Valentine's motion to dismiss the NMUPA claim against them under Federal Rule of Civil Procedure 12(b)(6).

March and Valentine additionally move the Court to dismiss claims three and four, for tortious debt collection and defamation, respectively. Plaintiffs did not plead that March or Valentine are liable for these claims. Therefore, I recommend that the Court deny March and Valentine's motion to dismiss these claims as moot.

Finally, March and Valentine argue that the claim against them for negligent hiring, supervision, or retention of Miguel Guzman must be dismissed because Plaintiffs do not allege something in Guzman's background that should have alerted March and Valentine to an unreasonable risk that Guzman would violate the FDCPA.

"The basic inquiry in all negligent hiring cases is whether the employer knew or should have known of circumstances in the employee's background which create an unreasonable risk of injury to the persons with whom the employee could be reasonably expected to interact." *Grassie v. Roswell Hosp. Corp.*, 258 P.3d 1075, 1093 (N.M. Ct. App. 2010) (citing *Spencer v. Health Force, Inc.*, 107 P.3d 504, 508 (N.M. 2005)).

While Plaintiffs allege that Guzman made the wrongful calls, they do not allege that Guzman had a history of violating the FDCPA or that March or Valentine should have been on notice. Even assuming that March and Valentine oversaw hiring and firing decisions at AFB, Plaintiffs conclusory statement that March and Valentine "should have known that hiring, retaining and supervising Mr. Guzman . . . would create an unreasonable risk of injury to persons like Plaintiffs" does not adequately allege facts to sustain the claim. (Doc. 43 at 16.) Even Julius,

16

in his deposition, stated that it was "kind of shocking" to hear Guzman engage in inappropriate collection practices and that he "seemed like a good dude[ with] no issues." (Doc. 70-1 at 30.) Nowhere in the amended complaint do Plaintiffs allege that Guzman had prior difficulties complying with the FDCPA or any other information that should have alerted March and Valentine to the fact that he created an unreasonable risk. Therefore, I recommend that the Court conclude that Plaintiffs failed to a state a claim against March or Valentine for negligent hiring, supervision, or retention, and accordingly grant March and Valentine's motion to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

As explained above, I recommend that the Court conclude it has personal jurisdiction over March and Valentine and deny their motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). I further recommend that the Court grant-in-part and deny-in-part March and Valentine's motion to dismiss for failure to state a claim under Rule 12(b)(6). Specifically, I recommend that the Court deny the motion with respect to the FDCPA claim, deny-as-moot the motion with respect to the tortious debt collection and defamation claims, and grant the motion with respect to the NMUPA and negligent hiring, supervision, or retention claims.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.